## Daubert *v.* Pennsylvania R. R., Appellant.

*Railroads—Covenant—Ejectment.*

An owner of land who has agreed to convey land to a railroad company for a right of way, and has let the company into possession, may enforce the covenants of the agreement as to the payment of the purchase money, the preservation of a spring, and the building of a crossing, by an action of ejectment.

Argued Feb. 27, 1893. Appeal, No. 100, July T., 1892, by defendants, from judgment of C. P. Berks Co., Aug. T., 1887, No. 90, on verdict for plaintiff, John H. Daubert. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.

Ejectment.

At the trial, before ERMENTROUT, P. J., it appeared that, on

Jan. 13, 1885, plaintiff entered into an agreement under seal with defendant, which was as follows :

"I, John H. Daubert, of Weatherly, Carbon county, and state of Pennsylvania, for and in consideration of the advantages to be derived from the location and construction of the railroad hereinafter mentioned, and of the sum of one dollar to me in hand paid by The Reading & Pottsville Railroad Company at or before the execution hereof, the receipt whereof is hereby acknowledged, and of the further sum of one hundred and seventy-four dollars lawful money to be paid to me by the said company upon the execution and delivery of the deed of conveyance hereinafter mentioned, do hereby, for myself, my heirs, executors, administrators and assigns, grant to the said company, their successors and assigns, the privilege of surveying, locating, constructing, and using, by themselves, their engineers, contractors, agents, and employees, a railroad upon such line or route and with as many tracks as they may deem proper, through, over, and upon a certain tract or parcel of land belonging to me, situate in Upper Bern township, Berks county, and state of Pennsylvania, bounded southerly by Hossler & Meck ; easterly by Benjamin Fink, etc. ; westerly by John Jacoby, and northerly by the P. & R. Railroad.

"And I do also, for myself, my heirs, executors, administrators and assigns, hereby covenant and agree to execute and deliver to the said The Reading & Pottsville Railroad Company, their successors and assigns, whenever requested, a proper deed of conveyance in fee-simple, clear of all incumbrances and by good and satisfactory recorded title for the strip or piece of ground upon which said railroad shall be located and constructed, said strip of ground to extend the whole length or breadth of the above mentioned tract of land, if required, and to be not over 75 feet wide at the east end and 97 feet wide at the west end, with such additional widths for slopes at deep cuttings, embankments, retaining walls, bridges, and drains as may be required for properly constructing, maintaining, and operating said railroad, said strip of ground to be fully described in the said deed of conveyance ; and further, to release the said company, their successors and assigns, from all claims and demands for damages which may accrue to myself, my heirs, executors, administrators, or assigns, by reason of the taking and using of

the said land for said railroad, or by reason of the construction, maintenance, and operation of the said railroad on and over said tract or parcel of land.   Reserving the fence and stable on said strip of land and agree to remove the same upon thirty days' notice from the said railroad company, and the said company also agrees to protect the spring of water on said strip of land that it may be used by the said Daubert as fully and convenient as it now is, also the usual crossing required by law."

Evidence for the plaintiff showed that the company was let into possession of the land, but had performed none of the covenants of the agreement.

Defendant's points were among others as follows :

" 3. The plaintiff's land, according to his own testimony, lying altogether on one side of the railroad company's appropriation, he is not entitled to any crossing." [7]

" 4. The clause in the agreement providing for the usual crossing required by law had reference to a possible location of the railroad which would leave a part of the plaintiff's land on the other side of the appropriation.   It appearing, however, from the plaintiff's testimony that the appropriation made by the railroad company was along the limits of his land, leaving no portion thereof on the opposite side from the plaintiff's buildings, the said clause does not entitle him to a crossing." [8]

" 5.  The clause in the agreement, under which the railroad company were to ' protect the spring of water on said strip of land that it may be used by the said Daubert as fully and convenient as it now is,' did not have reference to the possible muddying of the water from the embankment of the company, but refers entirely to the possible extension of the company's embankment or structure to the limit of their right of way, in which event the water of the spring is under the said agreement to be led to a point beyond such extended embankment, so that the same may be used by Daubert; and as the embankment has not been extended, and the plaintiff admits that he is still able to use the spring fully and conveniently, the verdict must on this point be for the defendants." [9]

. " 6. The $174 mentioned in the said agreement does not become due to the plaintiff until the railroad company shall have requested him to convey, and he shall have conveyed,

the said land by a proper deed of conveyance in fee simple, clear of all incumbrances, and by a good and satisfactory recorded title." [10]

" 7. Under the agreement there was a present grant to the railroad company, their successors and assigns, of the privilege of surveying, locating, constructing, and using their railroad on the plaintiff's land. The agreement for the protection of the spring of water, and for the usual crossing required by law, are part of the consideration for the said grant. They are not a condition to be performed by the railroad company to entitle them to the use of the land, but they are part of the consideration to be paid for such use; and the plaintiff cannot recover in ejectment for nonperformance on the part of the railroad company." [11]

" 9. Under all the testimony in this case, the verdict must be for the defendants." [12]

" *Answer:* These points we negative."

" 8. An action of ejectment will not lie for the violation of any of the covenants made and to be performed by the railroad company under the agreement of January 30, 1885. *Answer:* This point is reserved." [13]

Under instruction of the court, the jury rendered a verdict in the following form:

" For the plaintiff for the land described in the writ: conditioned, that if the defendant shall, within sixty days, pay to the plaintiff the sum of $174, with interest from January 30, 1885, and all the costs of this suit, the plaintiff thereupon delivering to the defendant a proper deed of conveyance in fee-simple, clear of all incumbrances, and a good and satisfactory recorded title for the strip of land or piece of ground described in the writ; and further, if within said time the defendant shall protect the spring of water on said strip of land, that it may be used by the plaintiff as fully and conveniently as at and before the time of the execution of the agreement under which the defendant entered; and further, that if the defendant shall within said time erect and construct over or under the railroad at the point where the same crosses the road leading to the premises of the plaintiff the usual crossing required by law, without doing further injury or damage to the property of the plaintiff, then judgment to be entered for the defendant."

The court discharged a rule for a new trial and entered judgment on the verdict in favor of plaintiff, in the following opinion by ERMENTROUT, P. J.:

" The plaintiff brought this action of ejectment upon his legal title. It became an equitable ejectment, because the defendant set up in answer thereto an agreement or contract for the purchase of the land. This agreement is correctly described in the indorsement upon the back as a ' Preliminary Agreement for fee-simple deed of land.'

"An inspection and consideration of its contents show an entire indivisible contract, not two contracts, one for easement and one for purchase; there is no inconsistency between its clauses. As was said of a somewhat similar agreement in Wheeling R. R. Co. v. Gourley, 99 Pa. 171, the company desired the right of way through Daubert's property, and in order to secure that right of way beyond all question, it bargained with him for the fee of the land over which it passed; Daubert agreed to convey, and the uses to which the company intended to put the land were set out in the agreement. Unable to specify the exact boundaries of the land wanted, this was left to be ascertained in the construction of the road. The consideration was for the entire grant, not, as set forth in point 7 of defendant, simply for the easement.

" It is clear that the legal title did not pass by the agreement, and therefore the action of ejectment was the proper remedy : Cook v. Trimble, 9 Watts, 15 ; Krebs v. Straub, 20 W. N. 25.

" There is no conveyance of the title therein ; a further assurance is contemplated. Having retained the legal title, plaintiff may enforce the payment of the purchase money. He stands in need of nothing more to enable him to recover the purchase money at law, as the land is pledged for the payment by the retention of the title : Bear v. Whisler, 7 Watts, 144–148 ; Cadwalader v. Berkeiser, 32 Pa. 43. It is clear that the consideration has not been paid in any way, and it would be wrong for defendant to hold both land and money. The money, the protection of the water, the crossings, are all parts of the consideration to be recovered, to be paid for the entire grant, not, as in defendant's seventh point, merely for the use of the land.

" The fact that the entry upon the land was under the agreement does not affect the right of action of ejectment. Where

the entry is in pursuance of a bargain with, or leave given by the owner, their rights and title rest on the bargain or contract, and not on the statute. But the right of action of ejectment still remains, and the action is treated as equitable in its character: Oliver v. Railway Co., 131 Pa. 408.

" Nor is the tender of a deed a necessary preliminary to his right of action. As was said in Smith v. Webster, 2 Watts, 478, ' the plaintiffs having the legal title, this was clearly sufficient to enable them to maintain the action of ejectment, and it was only on principles of equity that the defendant there could claim to defend against the plaintiff's recovery of the possession of the land. Then what did equity require the defendant below to do in order that he might be protected in the possession of it? Certainly to pay the money (the consideration). By the terms of the contract he had no right to demand a deed of conveyance until he paid the purchase money, and not having offered to pay it, he was neither in law, nor yet in equity, entitled to demand a deed of conveyance. And not being entitled to demand it, equity would not interpose to keep him in possession of the land. A vendee, under an executory contract for the purchase of the land, who has obtained the possession of it under his agreement, can only defend himself in that possession in Pennsylvania, where we have no court of chancery, upon such ground as would entitle him to a decree of injunction by a court of equity against his vendor, who was proceeding by action of ejectment at law to turn him out of possession.'

" Nor is there any question of no title raised. The plaintiff has shown his title clear of liens and mortgages.

" It is urged that Cadwalader v. Berkheiser, 32 Pa. 43, shows that the ' time for the payment of the purchase money by the original articles had transpired before suit brought. That there was therefore no contract relation existing to prevent proceedings in the legal title.' That in the present agreement no time is fixed, that payment of the $174 is to be made ' upon the execution and delivery of the deed,' and that the deed is to be delivered ' whenever requested.' It is boldly contended that, as defendant has never requested, and need never request, time for payment was not yet arrived and need never arrive, and ' this contract relation existing,' no right of action exists. If

this were a just contention, the plaintiff is right in designating it, 'a clumsy fraud unworthy of a great corporation, devising a cunning trap to acquire the land of ignorant farmers for building a railroad without compensation.' But it seems to us an equitable ruling to say that, taking the whole agreement in view, the delivery of deed and time of payment was when the construction of the railroad was completed. Then the protection of the spring, the completion of the road, parts of the consideration, were obviously to be furnished, and the exact boundaries of the land to be ascertained so that the necessary deed might be written, tendered, and the delivery of the entire consideration be made.

" This would be that 'reasonable time,' which the law would hold as proper, where no time is definitely fixed for the performance or nonperformance of the conditions of a contract. And this seems to us to be the evident intention of the agreement. It would seem to us iniquitous to retain land and money, and bring ruin upon the plaintiff's property upon a plea of this character.

" This being an equitable ejectment, does the verdict preserve the equities of the defendant who entered into possession of the land? The conditions attached to the verdict are for his protection and the preservation of his rights, if he choose to avail himself of the conditions.

" An inspection of the verdict shows that nothing is required save literal compliance with the contract. One thing seems to have been omitted: when the deed is delivered, it must be accompanied with the release from all claims and damages as per agreement. This condition is within the power of the court to annex in molding the verdict. And we require the plaintiff to offer this release.

" It is urged that the verdict is specific as to place of crossing, whereas the agreement specifies ' the usual crossing required by law.' That as the balance of plaintiff's land lies altogether upon the side of the railroad, 'no crossing is required by law.' In the case of Dubbs v. Phila. & Reading R. R. Co., Adv. R. 513, [148 Pa. 66] the Supreme Court say, 'the facts of the case do not require us to consider whether a road skirting a man's land or passing along the edge of it, is a road running through a man's land within the meaning of the act.' This interpretation would

require the clause of the agreement to be eliminated.   In view of the clause in the agreement, the first section of the twelfth section of act of February 19, 1849, P. L. 84, Purdon, 1425, pl. 51, requiring the company where there is an established road or way existing, to construct the road across such way so as not to impede the passage or transportation of persons along the same, and the fact that there was such an established way there, the verdict designating the road would seem proper.   This established way they have buried.   The plaintiff was not to be deprived of access to the outer world.   The act surely never contemplated this, the shutting in of the owner 'from crossing or passing over the land with wagons, carts, and implements of husbandry as occasion may require,' either in leaving his farm or bringing to it such wagons, carts, and implements of husbandry as he might choose to bring there.   It must be remembered the plaintiff's rights are under the agreement and not under the railroad law, which is referred to by way of analogy.

"It is unnecessary to say that binding instructions were not given, but the credibility of the testimony was left to the jury.

"To make the record complete, the rule for a new trial is discharged.   To avoid any misunderstanding, the 60 days mentioned in the conditional portion of the verdict will date from the filing of this opinion.

"The rule for judgment non obstante veredicto in favor of defendant upon the reserved point is also discharged."

*Errors assigned* among others were, (7–13) answers to points, quoting points and answers; (15) in directing the jury to find the conditional verdict, quoting it; (17) in not entering judgment for defendants non obstante veredicto.

*Cyrus G. Derr*, for appellant, cited: Krebs v. Stroub, 116 Pa. 405; Cook v. Trimble, 9 Watts, 15; Morgan v. Lake Shore, etc., Ry. (Indiana), 28 N. E. R. 548; 5 Am. & Eng. Enc. L. 528; Boody v. R. R., 24 Vt. 660; Hamilton v. Calhoun, 2 Watts, 140; Sampson v. Sampson, 4 S. & R. 329.

*Edward H. Shearer* and *Richmond L. Jones*, for appellee, were not heard.

PER CURIAM, March 20, 1893:

In response to plaintiff's testimony in chief, the defendant gave in evidence the agreement of January 30, 1885, between plaintiff and the Reading & Pottsville Railroad Co., in connection with agreement of consolidation and merger, October 7, 1885, between that company and the Pennsylvania Schuylkill Valley Railroad Co., and also lease of last named company, December 1, 1885, to the Pennsylvania Railroad Co., defendant, for all said lessor's railroads, etc., in the counties of Philadelphia, Montgomery, Chester, Berks and Schuylkill, duly recorded, etc., and then rested.

It was claimed by defendant that said first mentioned agreement was in effect " a present grant to the railroad company, its successors or assigns, of the privilege of surveying, locating, constructing and using their railroad upon the plaintiff's land," etc., and, in its 8th and 9th points, it requested the learned president of the common pleas to charge:

" 8. An action of ejectment will not lie for the violation of any of the covenants made and to be performed by the railroad company under the agreement of January 30, 1885."

" 9. Under all the testimony in this case, the verdict must be for the defendant."

He rightly held that the agreement was merely a contract to convey and not a conveyance; that the legal title was still in the plaintiff; and he virtually instructed the jury, pro forma, that under our system of administering equitable principles in common law actions, plaintiff had a right to maintain ejectment upon his legal title for the purpose of enforcing payment, by means of a conditional verdict, of the purchase money due him, etc: Cook v. Trimble, 9 Watts, 15 ; Krebs v. Stroub, 116 Pa. 405.   He accordingly negatived the 9th point and reserved the question of law raised by the 8th point.   That question he afterwards rightly ruled in favor of plaintiff, and thereupon judgment was entered in his favor on the conditional verdict returned by the jury, and subsequently so molded by the court as to require the deed, when delivered, to " be accompanied with the release from all claims and damages, as per agreement."

The conditional verdict, as thus molded by the court, preserves all the equities of the defendant company as terre tenant under the Reading & Pottsville Railroad Co.   The conditions

attached to the verdict are for its protection and the preservation of its rights, if it chooses to avail itself of them.  Nothing, save compliance with the terms of the contract, is required. Less than that would be unjust and inequitable to the plaintiff. He is entitled, upon compliance with his part of the contract, to receive the purchase money, and to the performance, by the railroad company, of its covenants; and the court below will see that no injustice is done to either party.  The defence in this case has, at least, the appearance of being obstructive rather than meritorious.

It is a mistake to say that the court gave binding instructions to the jury.  There was practically no conflict of testimony; and, as the learned judge said in his charge, " There seems to be no material dispute as to the facts."  He accordingly said to the jury that if they believed the facts testified to, the plaintiff was entitled to a verdict.  There was no error in this; nor do we find any error in the record that calls for a reversal or modification of the judgment.

The sixty days within which defendant is required, by the verdict, to comply with the conditions thereto annexed, are to be computed from this date.

Judgment affirmed.